# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔠𝔬𝔲𝔯𝔱
# 𝔠𝔢𝔫𝔱𝔯𝔞𝔩 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔠𝔞𝔩𝔦𝔣𝔬𝔯𝔫𝔦𝔞

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 5:16-cv-01539-ODW(SPx) |
| Plaintiffs, | **ORDER** |
| v. | |
| TAREK M. AL-SHAWAF; JAMES D. NOWLIN; DONNA L. NOWLIN; and DOES 1 THROUGH 5, | |
| Defendants. | |

## I.   INTRODUCTION

Before the Court are cross-motions for partial summary judgment that primarily seek to resolve two issues: (1) Whether Defendants James Nowlin and Donna Nowlin (collectively, the "Nowlins") were employees of Defendant Tarek M. Al-Shawaf ("Al-Shawaf"), acting in the scope of their employment, in the time period leading up to the Mountain Fire[1]; and (2) Whether Plaintiff can recover fire suppression, accounting, investigation, and collection costs under California Health & Safety Code sections 13009 or 13009.1 from Defendants.[2]

---

[1] As used herein, "Mountain Fire" shall mean the wildland fire in Riverside County that allegedly ignited on Defendant Tarek M. Al-Shawaf's property on or around July 15, 2013 in Mountain Center, California.

[2] Having carefully considered the papers filed in support of and in opposition to the Motions, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

For the reasons set forth below, the Court **DENIES** the motions for partial summary judgment (ECF Nos. 52, 54, 55, 56).

## II.  FACTUAL BACKGROUND

This case involves a fire that allegedly ignited on or around July 15, 2013, on Al-Shawaf's property located at 53750 Highway 243 (hereinafter, "the Property"). (Def. Al-Shawaf's Statement of Genuine Issues of Material Fact in Opp'n to Pl.'s Mot. for Partial Summ. J. ("Al-Shawaf's SMF") 1, ECF No. 57-1.)  Defendant Al-Shawaf owns the Property, and the Nowlins were caretakers of the Property.[3]  (Donna Nowlin's Statement of Uncontroverted Facts ("DNSUF") 2, ECF No. 55-1; Def. Al-Shawaf's Opp'n to Mot. for Partial Summ. J. ("Opp'n to Pl.'s MPSJ") 1, ECF No. 57.)

Ms. Nowlin started working as a caretaker of the Property in 2005, and Mr. Nowlin started in 2008.  (Pl's Statement of Uncontroverted Facts ("PSUF") 5, 24, ECF No. 54-1.)  Although disputed, Ms. Nowlin's duties included cleaning and caring for the house located on the Property, paying the bills and expenses associated with the Property, and notifying Al-Shawaf of any repairs that needed to be made to the Property.  (Pl.'s Response to Statement of Material Facts ("PRSMF") 7, ECF No. 58-9.)  Also, although disputed as well, Mr. Nowlin's duties included gardening, lawn mowing, maintaining the outside portion of the Property, and determining if a contractor was necessary to perform work or services on the Property.  (PRSMF 8.)

In 2011, Mr. Nowlin was informed that there was an electrical problem related to a water pump at the north well of the Property.  (PSUF 40.)  At some point before the Mountain Fire, Mr. Nowlin, along with an electrician, Robert Haviland, inspected the Property's main electrical panel.  (PSUF 42.)  Although the parties dispute whether Mr. Haviland actually turned off the power to the electrical line, the parties do not dispute that Mr. Haviland was unable to do the necessary work to correct the

---

[3] Defendant Al-Shawaf is a citizen of Saudi Arabia and visits the Property approximately 4-5 times a year.  (Donna Nowlin's Mot. for Partial Summ. J. ("Ms. Nowlin's MPSJ") 2, ECF No. 55-4.)

problems with the electrical line without Al-Shawaf's approval. (DNSUF 25.) Following the inspection, the Nowlins informed Al-Shawaf that there was a problem with the electrical line. (DNSUF 28.) Al-Shawaf told the Nowlins that since the well was not producing any water, he did not want to do the electrical work at that time. (DNSUF 29.) Nonetheless, Ms. Nowlin included the cost for the electrical work as part of the budget she submitted to Al-Shawaf in October 2011. (DNSUF 30.) However, Al-Shawaf did not wire the money to the Nowlins to do the work. (DNSUF 30.) When Al-Shawaf visited the Property in 2012, he discussed repairing the electrical line with the Nowlins, but again, chose not to have the repair done. (DNSUF 31.) Al-Shawaf informed the Nowlins that because the power line was disabled, they did not have to spend money on it. (Pl's Statement of Additional Material Facts ("PSAMF") 12, ECF No. 59-9.) In July 2013, Ms. Nowlin sent Al-Shawaf a budget with a line entry described as "Electrician for well & box 3,000.00." (PSAMF 13.) At this point, Al-Shawaf wired the money to Ms. Nowlin for this line item, however, the Mountain Fire occurred before any work was done. (PSAMF 14.)

The California Department of Forestry and Fire Protection ("Cal Fire") investigated the Mountain Fire and determined that the Mountain Fire started when an electrical arc inside a junction box on the Property caused hot material to escape from the junction box and ignite the vegetation on the ground. (Ms. Nowlin's MPSJ 5.) Defendants dispute Cal Fire's findings. (*Id.*)

Plaintiff brings this lawsuit against Defendants to recover, among other damages, fire suppression, accounting, investigation, and collection costs related to the Mountain Fire.

### III.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550

U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out the material facts to which the moving party contends there is no genuine dispute. C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without

controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence files in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV. DISCUSSION

Plaintiff and Defendants move for partial summary judgment. Plaintiff moves for partial summary judgment on two related grounds: (1) The Nowlins were employees of Al-Shawaf, pursuant to California law, in the time period leading up to the Mountain Fire; and (2) The Nowlins were acting within the scope of their employment in the time period leading up to the Mountain Fire. (Pl.'s Mot. for Partial Summ. J. ("Pl's MPSJ") 1, ECF No. 54.)

Defendants, on separate motions, move for partial summary judgment on the grounds that, as a matter of law, they cannot be held liable for fire suppression, investigation, accounting, and other related costs under California Health & Safety Code sections 13009 or 13009.1. (Def. Al-Shawaf's Mot. for Partial Summ. J. ("Al-Shawaf's MPSJ") 1, ECF No. 52-1; Ms. Nowlin's MPSJ 1; James Nowlin's Mot. for Partial Summ. J. ("Mr. Nowlin's MPSJ") 1, ECF No. 56-4.)

### A. Plaintiff's Motion for Partial Summary Judgment

Under California law, a person who performs a service for a company or another individual is presumed to be an employee. *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1067, 1073 (N.D. Cal. 2015). If the company contends that the person is not an employee, but rather is performing services as an independent contractor, the burden shifts to the company. *Id.* The principal question is "whether the person [or company] to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *Id.* at 1075 (citing *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989)). The company does not need to exercise its full right of control for a worker to be deemed an employee. *Id.* Whether a right of control exists is measured by examining: "if instructions were given, they would have to be obeyed on pain of at-will discharge for disobedience." *Ayala v.*

*Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 533 (2014) (internal quotation marks omitted). The right to terminate at will, without cause, is strong "evidence in support of an employment relationship." *Borello*, 48 Cal. 3d at 351 (internal quotation marks and citations omitted).

However, the control test for evaluating a worker's classification is "of little use in evaluating the infinite variety of service arrangements." *Id.* at 350. Accordingly, California courts endorse "several secondary indicia of the nature of a service relationship." *Id.* These "secondary indicia" include:

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Id.*

"[I]f reasonable people could differ on whether a worker is an employee or independent contractor based on the evidence in the case, the question is not for a court to decide; it must go to the jury." *Cotter*, 60 F. Supp. 3d at 1076; *see also Bowman v. Wyatt*, 186 Cal. App. 4th 286, 297 n.4 (2010) (stating that whether a worker is an independent contractor or an employee "is a question of fact if dependent upon the resolution of disputed evidence or inferences"). This is true even if no

significant dispute exists about the underlying facts because the act of weighing and applying numerous intertwined factors is generally the job of the jury. *Cotter*, 60 F. Supp. 3d at 1076–77.

The Ninth Circuit has even recognized that establishing an employee's status as a matter of law presents a "particularly difficult" hurdle given the multi-faceted test that courts have to apply. *Narayan v. EGL, Inc.*, 616 F.3d 895, 900 (9th Cir. 2010). In *Narayan*, even though a substantial amount of the underlying facts were undisputed, the Ninth Circuit concluded that it could not determine whether the workers were employees or independent contractors as a matter of law. *Id.* at 901 (citing *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1549 (7th Cir. 1987) (questioning whether the issue is "one of law").)

Here, the Court finds that there is material dispute of fact as to whether the Nowlins were employees or independent contractors. In examining the "primary factor" of the right to control the Nowlins, Plaintiff sets forth the following facts in support of Al-Shawaf's control: (1) Mr. Nowlin testified that if Al-Shawaf told him to do something, he would absolutely do it (PSUF 31); (2) Al-Shawaf is responsible for approving or disapproving each item in the proposed budgets sent to him by Ms. Nowlin (PSUF 34–36); (3) Ms. Nowlin would do special projects for Al-Shawaf if instructed even though the projects were different from her normal duties (PSUF 14); and (4) Al-Shawaf retained the right to terminate the Nowlins at his discretion (PSUF 50–51). In response, Al-Shawaf does not necessarily dispute his ability to control the Nowlins' work, Al-Shawaf only argues that he "did not retain control over the *manner* in which their work was done." (Opp'n to Pl.'s MPSJ 9.) Specifically, Al-Shawaf did not monitor or supervise the Nowlins' work. (*Id.* at 2, 9.) The Nowlins did not have a set schedule and could set their own hours. (*Id.* at 10.) In support of his Opposition, Al-Shawaf offered the declarations of the Nowlins. (Decl. of Donna Nowlin ¶ 5, ECF No. 57-7 (stating that she took rest breaks, lunch breaks, vacation, and sick days whenever she wanted); Decl. of James Nowlin ¶ 4 (same).)

Courts have found that an independent contractor "is one who renders service in the course of an independent employment or occupation, following his employer's desires only in the results of the work, and not the means whereby it is accomplished." *Varisco v. Gateway Sci. & Eng'g, Inc.*, 166 Cal. App. 4th 1099, 1103 (2008). Where an employer "is more concerned with the quality of the result rather than the manner in which the work is done, that is evidence of an independent-contractor relationship." *Hennighan v. Insphere Insurance Solutions, Inc.*, 38 F. Supp. 3d 1083, 1098 (N.D. Cal. 2014).

The evidence presented by both sides indicate that there is a dispute of material fact regarding Al-Shawaf's control of the Nowlins. Although Al-Shawaf had the ability to terminate the Nowlins at his discretion and he had the ability to instruct the Nowlins on what projects to complete, Al-Shawaf has put forth evidence showing the Nowlins' autonomy, specifically the manner in how projects are completed, supporting a finding of independent contractor status. Al-Shawaf was generally more concerned with the result of the project rather than how the project is done. This is indicative of an independent contractor relationship. *See id.*

### 1. *Borello* Factors

In examining the "secondary indicia" (also known as the *Borello* factors), there are factors weighing in favor of both parties. However, when viewing the factors as a whole, there are genuine disputes of material fact that preclude partial summary judgment.

### a. Distinct occupation or business.

If a worker is engaged in a distinct occupation or business, then that would suggest that the worker is an independent contractor. *Harris v. Vector Marketing Corp.*, 656 F. Supp. 2d 1128, 1138–39 (N.D. Cal. 2009). This means that the worker held himself or herself out as a separate business or occupation. *Id.* at 1139.

This factor does not weigh in favor of either party. Although the Nowlins only worked for Al-Shawaf, which suggests that the Nowlins did not have a separate

occupation, the Nowlins identified themselves as self-employed on their tax returns and did not receive any pay checks or paystubs from Al-Shawaf; this supports the position that they were independent contractors. *See Hennighan*, 37 F. Supp. 3d at 1102–03 (identifying that self-employed status on tax return supports independent contractor status). Accordingly, the genuine dispute of material fact preclude a finding that this factor supports either parties.

b.     Direction of the principal.

If the type of work performed is done "under an employer's direction, it suggests an employer-employee relationship; if the work is usually done by a specialist without supervision, it suggests a lack of supervision and thus an independent-contractor relationship." *Hennighan*, 38 F. Supp. 3d at 1103 (internal quotation marks and citations omitted). Where a worker can "determine her own day-to-day hours, including her vacations and on most days, fix the time for her arrival and departure at her office and elsewhere . . . that suggests an independent-contractor status."

It is undisputed that the Nowlins did not have set schedules. They could set their own schedules and determine the day that they worked and the length of time they worked each day. (Decl. of Donna Nowlin ¶ 5; Decl. of James Nowlin ¶ 4.) However, it is also undisputed that the Nowlins sought Al-Shawaf's approval for the work they did by submitting monthly budgets. (PSUF 36.) Al-Shawaf did not generally supervise the Nowlins' day-to-day activities, but Al-Shawaf would be more involved on projects deemed "special" and "unusual." (Pl's MPSJ 6.) It is unclear how often Al-Shawaf supervised the Nowlins and how often the "special" and "unusual" projects occurred. Accordingly, as the Nowlins, on a day-to-day basis, did not receive much, if any, supervision from Al-Shawaf, this factor weighs slightly in favor of independent-contractor status.

/ / /

/ / /

c. <u>Skill required.</u>

"Where no special skill is required of a worker, that fact supports a conclusion that the worker is an employee instead of an independent contractor." *Harris*, 656 F. Supp. 2d at 1139.

This factor weighs in favor of employer-employee status. The Nowlins were caretakers of the Property, and although the exact duties are disputed, the Nowlins did not require any special skills to do their jobs. When special work needed to be done, such as the electrical work for the junction box, the Nowlins were responsible for finding the contractor and requesting Al-Shawaf's approval for the work. Beyond general work to care for the Property, the Nowlins' duties did not require any special skills.

d. <u>Instrumentalities, tools, and place of work.</u>

Where the employer "did not furnish the majority of the tools and instrumentalities [or] place to work, this fact weighs in favor of finding an independent-contractor relationship." *Hennighan*, 38 F. Supp. 3d at 1103 (internal quotation marks and citations omitted). However, where the worker "used his own car, purchased [his own] gas . . . and liability insurance and received no standard employee benefits, he is likely an independent contractor." *Id.* (internal quotation marks and citations omitted).

The factor also weighs in favor of employer-employee status. The Nowlins mainly used Al-Shawaf's equipment, with the exception of minor repairs, Al-Shawaf paid for Ms. Nowlin's personal cell phone and gas, and the Nowlins mainly worked on Al-Shawaf's property. (PSUF 13, 32.) Al-Shawaf's Opposition does not dispute these facts. (*See* Opp'n to Pl.'s MPSJ 14.)

e. <u>Length of time.</u>

The fifth factor, length of time, is undisputed by Al-Shawaf and weighs in favor of employer-employee status as Ms. Nowlin began working for Al-Shawaf in 2005 and Mr. Nowlin began working for Al-Shawaf in 2008.

f.    Method of payment.

"Where the worker is paid by the hour, it typically suggests an employment relationship; where the worker is paid by the job, it points toward independent contractor." *Hennighan*, 38 F. Supp. 3d at 1104.

The factor weighs in favor of employer-employee status. Although Al-Shawaf disputes how the Nowlins were paid, Al-Shawaf does not provide any clarity in an attempt to create a material dispute of fact. Based on the explanation provided by both parties, the Nowlins were paid a fixed amount each month, and the amount would be deducted based on the amount of expenses necessary to care for the Property. This method of payment occurred over the span that the Nowlins worked for Al-Shawaf (Ms. Nowlin since 2005 and Mr. Nowlin since 2008). This relationship appears more analogous to the Nowlins being employees than an independent contractor being paid by the job.

g.    Part of the regular business.

The seventh factor, whether the work is an integral part of the regular business of the employer weighs in favor of independent-contractor status. It is undisputed that Al-Shawaf's regular business is engineering and the Nowlins' work as caretakers had nothing to do with Al-Shawaf's business.

h.    Parties' belief.

Courts will look to the parties' belief as to their relationship status. *Borello*, 48 Cal. 3d at 350. Generally, this factor will look at the agreements between the parties expressly stating the relationship created. *See id.*

This factor is neutral. Although Plaintiff sets forth evidence that the parties all subjectively testified that they had an employer-employee relationship (Pl.'s MPSJ 16–17), the Nowlins claim that they are self-employed on their taxes, which cuts against the employer-employee status. The Court further notes that the parties' testimonies regarding their status are ambiguous. The questions and answers did not specifically address whether the Nowlins believed they were independent contractors

or employees, and instead, the question and answer simply inferred that the Nowlins were employed by Al-Shawaf. This still leaves the question of *how* the Nowlins were employed, either as an employee or independent contractor.

After examining the primary control factor and the *Borello* factors, the Court finds that there is a genuine dispute of material fact to preclude partial summary. As such, the Court does not reach the question of whether the Nowlins were acting within the scope of their employment and on that basis and for the aforementioned reasons, Plaintiff's motion for partial summary is denied.

**B.    Defendants' Motion for Summary Judgment**

Defendants move for summary judgment that, as a matter of law, they cannot be liable for fire suppression, fire investigation, accounting, and collection costs under California Health and Safety Code sections 13009 and 13009.1.

In California, there is no common law right to recover fire suppression and related costs. *City of Los Angeles v. Shpegel-Dimsey, Inc.*, 198 Cal. App. 3d 1009, 1020 (1988). The right to recover fire suppression, fire investigation, accounting, and collection costs are statutorily based. *Id.* Specifically, California Health & Safety Code section 13009 allows recovery for fire suppression costs and section 13009.1 creates a right to recover fire investigation, accounting, and collection costs.

Both sections 13009 and 13009.1 allow recovery, either fire suppression costs or fire investigation, accounting and collection costs, when "[a]ny person (1) who negligently, or in violation of the law, sets a fire, allows a fire to be set, or allows a fire kindled or attended by him or her to escape onto any public or private property." *See* Cal. Health & Safety Code §§ 13009, 13009.1. Accordingly, as applied here, liability for fire suppression, fire investigation, accounting, and collection costs turns on whether Defendants fall into the category of "any person who negligently, or in violation of the law, sets a fire, [or] allows a fire to be set . . . to escape onto any public or private property."

/ / /

## 1. Recovery of Fire Suppression and Related Costs under Cal. Health & Safety Code Sections 13009 and 13009.1

The basis for Defendants' motions for partial summary judgment is the California Court of Appeal decision in *Department of Forestry and Fire Protection v. Howell* ("*Howell*"), 18 Cal. App. 5th 154 (2017). Defendants take the position that *Howell* stands for the proposition that vicarious liability and common law negligence principles are not sufficient to trigger liability for fire suppression and related costs under California Health & Safety Code sections 13009 and 13009.1.

A federal court confronted with an issue of California state law will "follow the rulings of the California Supreme Court and, in the absence of such a ruling, attempt to determine how the California Supreme Court would rule if presented with the issue at hand." *HotChalk, Inc. v. Scottsdale Ins. Co.*, No. 16-17287, 2018 WL 2473474, at *1 (9th Cir. June 4, 2018) (citing *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992)). In doing so, federal courts look to the intermediate appellate courts of the state for guidance. *DeSoto*, 957 F.2d at 658. However, federal courts are not bound to follow the decisions by the intermediate appellate courts. *See General Motors Corp. v. Doupnik*, 1 F.3d 862, 865 n.4 (9th Cir. 1993). The parties agree, and the Court finds nothing to the contrary, that the California Supreme Court has not interpreted the scope of sections 13009 and 13009.1.

### a. Howell's interpretation of sections 13009 and 13009.1.

*Howell* involved a wildfire known as the "Moonlight Fire." *Dep't of Forestry and Fire Prot. v. Howell*, 18 Cal. App. 5th 154, 162 (2017). Cal Fire, along with several other plaintiffs, sought to recover fire suppression and investigation costs against (1) multiple landowners that owned the property where the fire started, (2) the property manager, and (3) the independent contractor and its employees responsible for cutting timber on the property. *Id.* The investigation concluded that the Moonlight Fire was caused by the independent contractor's operation of a bulldozer that struck a rock causing metal fragments to splinter and ignite the surrounding plant

matter, and that the fire was permitted to spread when the independent contractor failed to complete a required inspection of the area. *Id.* at 164. At the pretrial hearing, the trial court granted an oral motion for judgment on the pleadings, dismissing the landowner and the property manager defendants on the basis that sections 13009 and 13009.1 did not provide a legal basis for relief. *Id.* at 165. This left only the independent contractor (the company) and its employees as the defendants. *Id.* at 176. The *Howell* court affirmed the trial court's judgment that dismissal was proper, finding that sections 13009 and 13009.1 do not incorporate common law theories of negligence and vicarious liability as a basis for recovery. *Id.* at 167. The *Howell* court conducted an analysis of the legislative history of the statute. Specifically, the statute, as originally enacted, allowed recovery of fire suppression and related costs from any person who "(a) *personally or through another* . . . [w]ilfully, negligently, or in violation of law, commits any of the following acts . . ." *Id.* (emphasis in original). In 1971, the statute was amended, removing the phrase "personally or through another," and allowing recovery against "[a]ny person who negligently, or in violation of the law, sets a fire, allows a fire to be set, or allows a fire kindled or attended by him to escape onto any forest, range or nonresidential grass-covered land." *Id.* at 178. The *Howell* court noted that another section, section 13007, still permits liability imposed on "any person who personally or through another." *Id.* at 179. Based on the presence of the language of "personally or through another" in section 13007 and the absence of such language in sections 13009 and 13009.1, *Howell* concluded that the legislative intent was to preclude "application of vicarious liability concepts in the latter sections." *Id.* *Howell* further found that the word "negligently," used in the statute, was an adverb modifying three phrases "(1) sets a fire, (2) allows a fire to be set, or (3) allows a fire kindled or attended by him or her to escape." *Id.* Specifically, the adverb negligently meant that "the tortious actor failed to comply with a standard of conduct which any ordinary man *could* and *would* have complied: a standard requiring him to take precautions against harm." *Id.* Based

on this interpretation, the court concluded that the statute did not allow a cause of action based on a person who "negligently supervised, managed, hired, or inspected another person who set or allowed [a fire] to be set." *Id.*

   b.   <u>The plain meaning of sections 13009 and 13009.1.</u>

This Court declines to follow the decision set forth in *Howell*. Doing so would require the Court to ignore the plain meaning of sections 13009 and 13009.1 (including the definition section of the California Health and Safety Code) and would require the Court to ignore several other California appellate cases contrary to *Howell*'s holding.

As the California Supreme Court has not addressed this question, this Court must "predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Walker v. City of Lakewood*, 272 F.3d 1114, 1125 (9th Cir. 2001). To determine such intent, a court must first look to the statute, giving the language its usual and ordinary import. *State Farm Mutual Automobile Ins. Co. v. Garamendi*, 32 Cal. 4th 1029, 1043. Where the language is clear, the statute's plain meaning should be followed while giving effect to the specifically defined words that give the words a special meaning. *MacIsaac v. Waste Management Collection & Recycling, Inc.*, 134 Cal. App. 4th 1076, 1082–83 (2005). If the statutory language is clear and unambiguous, there is no need for judicial construction. *Id.*

Here, the plain meaning of California Health and Safety Code sections 13009 and 13009.1 is unambiguous and contemplates vicarious liability. The California Health and Safety Code, as amended in 1994, defines a person as "any person, firm, association, organization, partnership, business trust, corporation, limited liability company, or company." Cal. Health & Safety Code § 19. This definition is meant to govern the entire California Health and Safety Code sections, including sections 13009 and 13009.1. Cal. Health & Safety Code § 5; *see also Haverstick v. S. Pac. Co.*, 1 Cal. App. 2d 605, 607, 610 (1934) (holding a corporation liable to a landowner

when the corporation's employees failed to use "ordinary care and diligence in the attempted extinguishment of the fire"). As companies necessarily act through their employees and agents, to find that companies cannot be held vicariously liable would require the Court to completely ignore the plain meaning of the statute. *See Taormina Theosphical Community, Inc. v. Silver*, 140 Cal. App. 3d 964, 971 (1983) (stating that "corporations necessarily act through agents"). Although *Howell* recognized the plain meaning of the statute, and even referred to the definition of "person," the court chose to ignore the plain meaning of the statute because it failed to "clearly delineate the impact of the inclusion of the term 'negligently.'" *Howell*, 18 Cal. App. 5th at 177. The Court is not persuaded that the inclusion of the term "negligently" somehow precludes vicarious liability. The practical effect of *Howell* would mean that corporations can never be held responsible under sections 13009 and 13009.1 by hiding behind the acts of their employees. Accordingly, the Court will defer to the plain meaning of the statute instead of *Howell*'s interpretation.

c.    *Howell* ignores the ruling of other state court decisions.

The Court is further guided by the decisions of other California appellate court decisions. Not only did these other decisions allow vicarious liability, but they also allowed other causes of action based on the so-called common law negligence principles. The Court does not disagree with *Howell*'s interpretation of negligently in that it is an adverb modifying three potential phrases: "(1) sets a fire, (2) allows a fire to be set, or (3) allows a fire kindled or attended by him or her to escape." *Howell*, 18 Cal. App. 5th at 179. However, reading the word negligently in this way does not result in a preclusive effect on common law negligence principles. A person who is found to have negligently "supervised, managed, hired, or inspected" could be sufficient for a finding that a person negligently "allows a fire to be set" or "allows a fire kindled or attended by him or her to escape," satisfying sections 13009(a)(2) or 13009.1(a)(2). *Howell*'s interpretation of "negligently" would only allow an actor who sets a fire to be held liable and would render the second clause ("allows a fire to

be set") and third clause meaningless. The only way a person could be held liable for negligently allowing a fire to be set are through the common law negligence principles enunciated by *Howell*.

This interpretation of the statute finds support in *Ventura County v. Southern California Edison Co.*, 85 Cal. App. 2d 529 (1948). In *Ventura County*, the plaintiffs recovered expenses they incurred in fighting and extinguishing the fire caused by the defendant. The defendant appealed and argued that the statute[4] only allowed recovery after a finding that the fire was caused "by defendant's direct and affirmative act . . . whereas the [jury] findings show only negligent construction and maintenance which indirectly caused the fire." *Id.* at 532. The court rejected defendant's argument. Instead, the court found that the defendant failed to appreciate the clause in the statute allowing for recoverability of fire suppression costs against "[a]ny person who negligently allows [a] fire to be set." *Id.* The court further found that the statute allowed recoverability based on the use of the word "negligently" for "negligent acquiescence in, or failure to prevent known conditions, circumstances, or conduct which might reasonably be expected to result in the start of a fire." *Id.* Accordingly, the court found that the defendant's failure to construct and maintain its equipment was sufficient to give rise to liability for damages. *Id.* at 532–33 (stating that the defendant "may fairly be said to have negligently allowed the fire to be set").

*Howell*'s critique of *Ventura County* is not well-founded. While *Howell* distinguished *Ventura County* on the basis that it imposed liability based on a different wording of the statute, it also attempted to distinguish *Ventura County* on the basis that liability was "not imposed on a third party with some responsibility to supervise

---

[4] The statute, as applied in *Ventura County*, is different from the current version of the statute. As applied in *Ventura County*, the statute stated: "Any person who: (1) Personally or through another, and (2) Willfully, negligently, or in violation of law, commits any of the following acts: (1) Sets fire to, (2) Allows fire to be set to, (3) Allows a fire kindled or attended by him to escape to the property, whether privately or publicly owned, of another, is liable to the owner of such property for the damages thereto caused by such fire." *Ventura County v. S. Cal. Edison Co.*, 85 Cal. App. 2d 529, 532–33 (1948).

or oversee the actor, but on the actor itself that failed to properly maintain its own equipment." *Howell*, 18 Cal. App. 5th at 180. Although *Howell* was correct that the language of the statute is literally different, *Ventura County's* interpretation of negligently allowing a fire to be set is instructive and does not change based on the removal of the phrase "personally or through another." Further, *Howell*'s distinction that liability was imposed on the actor itself that failed to properly maintain its own equipment is flawed. The court in *Ventura County* found that the cause of the fire was the negligent construction and maintenance of certain lines owned by the defendant (Southern California Edison). *Ventura County*, 85 Cal. App. 2d at 531. As a corporation, the corporation's only form of liability would be through vicarious liability. Specifically, the corporation's liability is based on the acts of its employees for negligently allowing a fire to be set through the negligent construction and maintenance of company equipment. It was the employees' failure to act that led to the vicarious liability of the defendant corporation. *See id.*

This interpretation of the statute allowing vicarious liability and common law negligence principles is supported by other cases as well. *See People ex rel. Grijalva v. Superior Court*, 159 Cal. App. 4th 1072, 1075–76 (2008) (stating that the case involved recovery of fire suppression costs caused by an employee of the real parties in interest for negligence, negligence per se, and public nuisance); *People v. S. Pac. Co.*, 139 Cal. App. 3d 627, 636–37 (1983) (finding that the verdict holding the company liable for fire suppression costs was proper based on a theory of "negligent maintenance or operation of the fire extinguisher, and for failure to clear combustible vegetation"); *see also Dep't of Forestry & Fire Prot. v. Lawrence Livermore Nat'l Sec., LLC*, 239 Cal. App. 4th 1060, 1067 (2015) (finding that the language "negligently . . . allows a fire to be set" to be interpreted as extending to negligent acquiescence in, or a negligent failure to prevent known conditions, circumstances, or conduct which might reasonably be expected to result in the starting of a fire).

/ / /

Further, *Howell*'s own internal inconsistency supports this interpretation of the statute. In affirming the trial court's decision, the only remaining claim involved the independent contractor and its two employees. *Howell*, 18 Cal. App. 5th at 176. The claim against the independent contractor's employees was that the employees "failed to timely complete a required inspection of the area where they had been working that day," which allowed the fire to spread. Based on *Howell*'s interpretation, the trial court should have also dismissed the claims against the independent contractor and its employees. However, the trial court allowed the case to proceed. On the one hand, the *Howell* court found that a person who "negligently supervised, managed, hired, or inspected another" to be too attenuated, and on the other hand, *Howell* affirmed the trial court's decision to allow a party whose only liability would be negligent supervision or negligent management to continue. *Id.* at 176. The Court cannot reconcile this contradictory position.

Accordingly, the Court finds that sections 13009 and 13009.1 do not preclude Plaintiff from recovering fire suppression, accounting, investigation, and other related costs from Defendants. Defendants' motions for partial summary judgment are denied.

> d. <u>Plaintiff's causes of action against Defendants are sufficient.</u>

Notwithstanding *Howell*, Plaintiff's causes of action against Defendants are sufficient to survive summary judgment.

With regards to the Nowlins, Plaintiff seeks to impose liability against them on the basis that they failed "to maintain [the] electrical equipment at [the Property] in accordance with [their] own job responsibilities, just like Southern California Edison was held responsible for its failure to repair its defective electrical equipment." (Pl.'s Opp'n to Donna Nowlin's Mot. for Partial Summ. J. ("Opp'n to Ms. Nowlin's MPSJ") 11, ECF No. 58; Pl's Opp'n to James Nowlin's Mot. for Partial Summ. J. ("Opp'n to Mr. Nowlin's MPSJ") 11, ECF No. 59.) Plaintiff admits that Ms. Nowlin's involvement with the defective electrical lines is appreciably less direct than that of

Mr. Nowlin or Al-Shawaf, but nonetheless, she knew that it was defective and failed to act to remedy the defect.  (Opp'n to Ms. Nowlin's MPSJ 7.)  Additionally, there is a genuine dispute of material fact as to whether the Nowlins acted negligently or in violation of the law in allowing the Mountain Fire to start.  The claims against the Nowlins are not based on vicarious liability, but based on their own actions in allowing the Mountain Fire to start.  Accordingly, a reasonable jury could find that the Nowlins negligently allowed a fire to be set by failing to properly maintain the electrical equipment.

Plaintiff seeks to impose both direct and vicarious liability against Al-Shawaf.  Specifically, Plaintiff argues that "[a]lthough [Al-Shawaf] knew that he owned a defective power line on his property, and that his own defective electrical equipment posed a danger, Dr. Shawaf initially decided not to fix it."  (Pl.'s Opp'n to Al-Shawaf's Mot. for Partial Summ. J. ("Opp'n to Al-Shawaf's MPSJ") 1, ECF No. 60.)  Plaintiff seeks to impose liability on Al-Shawaf for failing to maintain his own equipment that directly caused the fire.  (*Id.* at 1–2.)  Separately, Plaintiff also seeks to impose liability on Al-Shawaf for the negligent acts of his employees, the Nowlins, for failing to properly maintain the equipment.  (*Id.* at 2.)  Although the Court finds that there is a material dispute of fact as to whether the Nowlins were employees or independent contractors (as discussed previously), if a jury finds that the Nowlins were Al-Shawaf's employees and acting in the scope of their employment, then Al-Shawaf could be found liable to the extent that the Nowlins were negligent in maintaining the equipment that caused the fire.  Sections 13009 and 13009.1 do not preclude vicarious liability.

//
//
//
//
//

# IV.    CONCLUSION

For the reasons discussed above, the Court **DENIES** the parties' motions for partial summary judgment (ECF Nos. 52, 54, 55, 56).

**IT IS SO ORDERED.**

September 19, 2018

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**